Case number 3090686, people of the state of Illinois, Appalachia, by Mr. Gary Kninevich v. Stephen Chromik, a felon, by Mr. Joel Brown. Mr. Brown. May it please the court. Thank you, Your Honor. Counsel, ladies and gentlemen. Your Honors, nearly 50 years ago, my mother and father graduated from this university. This place has always been special to me, and it has a special place in my heart. I'm very grateful for the opportunity, and I thank the court and the university for allowing me to participate today. Your Honors, I have brief introductory remarks, and then I've prepared remarks on some of the points raised in Appellant's brief. This is truly a 21st century case. It involves concepts of microprocessor-driven communication and also involves most basic and core constitutional rights that form the basis of individual liberties in our republic. So the dichotomy that is present is the issues of new technology and how does the law keep up with emerging evidentiary issues underpinned by constitutional rights and society's mandate to preserve them. The duality will continue to present itself time and again in our courts. Therefore, clear direction is needed from courts of review in Illinois for litigants and lower courts to efficiently handle these evidentiary issues. So will history judge our time as the information revolution? In the last 40 years, there's been an explosion of information technology. We've experienced a sea change in the way that we communicate with each other. Carbon paper has gone the way of the buggy whip. We now have new lexicon, email, instant message, text, Twitter, Skype, words that didn't exist 20 years ago that become relevant in our case today. The town square has been replaced by MySpace and the barn dance can be found on Facebook. The instant gratification means of communicating, however, presents very important social problems. First off, one cannot fully express himself or herself with electronic communication. One is limited. Tone, intonation, punctuation, spelling can send the wrong message. This becomes relevant in our case. And while the information technology that we enjoy today brings much-needed transparency to many areas of society and governmental function, it also allows for the dissemination of erroneous information, either intentionally or unintentionally. So there exists a double-edged aspect to this explosion of technology, and it's in that context that we have to consider the case and conviction of Stephen John Cromick. Your Honors, I've raised eight points on appeal, as you know. I know that this court and other courts in Illinois thoroughly read the briefs. The case was tried for four days. I have 15 minutes. I'm not going to try to retry this case. The first issue that I raised in the brief and extensively briefed is our contention that the defendant was not proven guilty beyond a reasonable doubt. Rather than embarking on what would necessarily be a very lengthy discussion on the intricate fact pattern of what occurred, I will leave that argument to the brief unless the court has questions on it and turn to the issues that we've raised with regard to the constitutional violations that we've alleged. The defendant alleges that his Sixth Amendment right to confront and cross-examine witnesses was violated. The standard of review for this issue is de novo. I note that the state disagrees that the standard of review is de novo, and they've urged that the standard of review is abuse of discretion. When there is a constitutional violation that has occurred, the review is de novo. And I've explained that in the brief and in the case law that supports it, and as I go through this argument, I'll flesh that out a little bit more. As we all know, a criminal defendant has the right to confront and cross-examine witnesses who testify against him. This is found in the Sixth Amendment of the United States Constitution that's imposed on state courts by the 14th Amendment. It's also found in the Illinois Constitution in Article II, Section 8. How did this issue come up? This was a teacher and student alleged sex assault and abuse case. As the court knows from the record, the assault alleges the act of sexual penetration. Abuse alleges the act of something less. Call it fondling. The defendant was acquitted of the assault charge by the jury, and he was convicted of the abuse charge. So while he was acquitted of an act of sexual penetration, he was convicted of something less, if you will. During the examination of the victim on the stand, counsel for the people, who is present in this room and is a very capable and able attorney who has my respect, asked this minor the question of whether or not she had had sex before the allegations that she raises of having had sexual penetrative conduct with the defendant. Now, there's a problem with that, and the problem is obvious to anybody that has a working knowledge of the law and lawyers and judges alike, and that problem is that Illinois has a statute. It's 725.5-115-7. I've set it out in detail in the brief. The title of the statute is Prior Sexual Activity or Reputation as Evidence. It's commonly referred to in this state and in many states as the Rape Shield Statute. It is a shield. It is designed to protect victims, corroborating witnesses of sexual offenses from inquiry, unfair inquiry, by guys who stand on my side of the aisle about their prior sexual activity. It protects these victims and corroborating witnesses from trying to muddy up their reputation in the mind of the jury in order to gain an acquittal. The statute does allow for some of this evidence to be brought in under very narrow and limited circumstances, the most classic of which is where a defense is raised that the sexual activity was consented to by the victim, not present in our case because, as we all know, a child cannot consent to have sex with an adult. The only other time that prior sexual activity can be inquired into is if it's constitutionally required. In order to get over or into either of those areas, there must first, by statute, be a – there has to be a hearing that's held in the presence of the trial court before the trial starts to determine the admissibility of this type of evidence. A motion has to be filed by the proponent of the evidence. The judge has to make a ruling on the admissibility of it and give a defined ruling as to the contours of what that evidence will be and what the cross-examination will be. It's a very detailed statute. No motion was filed by the people. No motion was filed by the defense. The question came in, and it came in intentionally. And what I mean by intentionally is not that the prosecutor – we have no evidence that he knowingly violated the statute. I don't think maybe that was in his mind. That's what the record seems to suggest when you look at his response because the court halted the proceeding, sent the jury out of the room, and said, why did you ask that question? And the answer was basically to the effect, I had to ask that question. Why did you have to ask that question? Because the victim said – and there's two incidents at an apartment. The victim said she didn't know whether she had sexual intercourse on the first night or not. And he said she doesn't recall if they had sex or not. I think a normal person would wonder then, especially a person that young, who would be a virgin perhaps, there would be some other sign or evidence that they had, in fact, had sex. The point behind that was to establish, so I could argue later, no, there wouldn't be any indication. So the testimony leading up to this was we have this allegation of an incident in Woodford County in the high school equipment shed. We have an allegation of an overnight visit to the defendant's apartment with drinking, sexual activity, but trial testimony that the victim didn't remember if she had sexual intercourse or not. Woke up the next morning in his bed with him. And then testimony from the victim of yet another night, a second night at the apartment, where indeed at that time she remembered sexual intercourse occurred. So this really begs a gigantic question, and it's the elephant in the room, and that is how do you not know if you've had sex or not? You can't ask the follow-up question of you've had sex before, don't you know what it's like to be post-sexual? Well, I can't ask that as a defense lawyer because of the rape shield statute. I can't follow up on that. I can't argue that to the jury. I can't say this is not believable, this is not credible, that someone would say she went over to an apartment, drank, sexual activity began, I have a loss of memory, I woke up naked, then I went to a road race and ran three miles in 24 minutes, but the second night I know for sure I had sex. So we have very real credibility issues here. And any time as a defense lawyer when you prepare for a case like this, you're dealing with a child. You know, it's not my job to make this person feel bad. It's not my job to make her look bad. It's not my job to inquire of this 16-year-old about her prior sexual activity. But she answered the question after it was intentionally offered with a plan by the prosecution. The court stopped the proceeding and says, Brown, the door is not open. The statute is crystal clear. What are you going to gain by asking this question? That's the big question. What are you going to gain? That's what opposing counsel says. What would you ask? You have a couple of issues here. I'll interrupt you for a second. One is the prosecutor opened the door. You're saying the prosecutor opened the door by asking that question, thereby allowing you to or should have allowed you to examine the witness here. And then you also have the policy of the rape shield statute itself, which is to protect the victim's reputation. How do you balance those interests? With a mistrial. I move for a mistrial. I mean, the bottom line is we should be protecting this minor. All of the competitiveness of lawyering aside, we should be protecting this minor. And a mistrial would have cured the error, wouldn't have left it hanging, because this is corroboration and bolstering testimony from the victim elicited by the people. What's the real prejudice to your client from that question? What's the prejudice to your client from the question? Well, when we address questions of what's the prejudice, Justice Schmidt, there's this elephant in the room that I can't pursue, that I can't say, ladies and gentlemen of the jury, isn't this a lot like riding a bike? I mean, once you've done it, you never forget how. I mean, isn't this real? I mean, how can you honestly say you don't remember if you had sex or not? And underpinning that, Your Honor, is the fact that she testified to grand jury under oath that she did have sex that first night. There were two instances of sex. That was sworn testimony from her. And then she comes into trial and says, well, I don't remember if I had sex. We had very significant credibility issues here. So to be able to even follow up on it with one question, one question would be, how in the world? It's almost a rhetorical question to the victim that gets the jury, gets the point to the jury, and that is, how in the world do you not know? And I couldn't ask that one question. Well, when you look at the record as a whole, wasn't it pretty clear that the point of the first night was intoxication was the issue, that she drank too much and maybe blacked out? In other words, didn't the prosecutor, though, in essence, do what you do for you, what you couldn't do yourself, and that was to point out that the victim was sexually active? And so I'm struggling with any prejudice to your client from that question. Well, I don't want to point out that the victim is sexually active because the victim is a child, and I never would. So the prosecution didn't do me any favors by asking the question. However, when opposing counsel says, well, this is abuse of discretion, and we look at all these cases that talk about limiting the scope of cross-examination, none of the cases cited by the people talk about a complete shutdown by the court sua sponte of an issue, not one question was allowed. Did the prosecutor do my job for me there? No, but he created yet another wrinkle that was left unanswered. Mr. Brown, is your problem that by asking the question, the state bolstered the credibility of the witness and you did not have an opportunity to then go after that credibility? Justice McDade, that's absolutely what our problem is because this was bolstering. The issue of intoxication, Justice Schmidt, was talked about by the victim on both nights. She claimed memory loss as to both nights. She claimed extreme intoxication as to both nights. We did have evidence of after the first night where she didn't recall if she had sex or not in the trial testimony that she ran in the race for the cure and finished 56th out of over 400 people. So how did the question we're talking about and the answer, how conceivably did that bolster the victim's credibility? Okay. Thank you. I asked the victim on cross-examination if there was any evidence. If you don't remember, was there any evidence that you'd had sex? I'm no medical doctor, but I believe I am a father. There's evidence when people have had sex. It bolstered it by saying there wouldn't be any. That's exactly the statement that the prosecutor made to the trial court. I needed to show so I could establish there wouldn't be any indication. He clearly admits it was to bolster. You're talking about evidence of sexual penetration, right? Yes. The jury acquitted your client of sexual penetration. The jury acquitted my client of sexual penetration. So in other words, why is that now an issue then? If that bolstered the issue on sexual penetration, your client's been acquitted, that's as good as you can get. Well, Judge, I think it's pretty clear that we have a he said, she said case. Opposing counsel acknowledges that, and I think it's pretty clear that juries frequently when faced with a difficult decision, recall they asked a question of the trial judge during their five hours of deliberation. Can you give us a definition of reasonable doubt? I think the guilty on the lesser charge and the not guilty on the greater charge is a compromise verdict that was swayed by this improperly admitted evidence and the other evidence that I've briefed at length. And we can't get into the mind of the jury. The law doesn't allow us to ask them questions and file affidavits whether that affected them or not. But I think when you look at it as a whole, first off, from a public policy standpoint, you just can't allow that type of question and answer to come in. And secondly, to completely shut down the defendant when it does come in voluntarily by the people and by the victim, we should be allowed at least a minimal inquiry and argument. Thank you, Your Honors. Thank you, Mr. Brown. And Mr. Grunewald. Thank you. Thank you, Your Honor. May it please the court, counsel, ladies and gentlemen. In addressing the issues in this case, I think what we first have to do, and I think Justice Schmidt kind of somewhat set the tone for my argument, is the fact that we have to look at what was charged in this case originally. Criminal sexual assault based on sexual penetration and criminal sexual abuse based on sexual conduct. The criminal sexual assault was also an element in that case, was also the fact that the resulting intercourse occurred as a result of the position of trust held by the defendant. Now, I take issue with counsel on the fact that, in his brief, he constantly argues throughout with respect to the various errors that are raised during the course of the trial. He argues that the jury acquitted the defendant because they didn't believe the victim, because they didn't believe that they had intercourse. And I will submit that that is error. The jury could very well have determined, based on the evidence, that intercourse did, in fact, occur. But what the state had not proved was that the intercourse occurred as a result of the position of the defendant. That is, because he was teacher slash soccer coach slash mentor, that, as a result of that position of trust, that he somehow used that position to force her into having intercourse. They could very well have found, based on this record, that that element was not proved. Yet they could, at the same time, consistently find him guilty of the aggravated, or excuse me, of the criminal sexual abuse count, because that was based on the fact that, of the sexual conduct, which would be the touching, it was based on her age being, I believe, at least 14 under 17, and he was at least five years older. So what we have is, it's similar to the old statutory rape type of statute, where we're protecting the young from their unfortunate decisions that they make, and it's all based on the age. There is nothing inconsistent about what the jury did and what they determined, what they found, based on the evidence. You disagree with counsel, then, that this was a compromise verdict? Oh, definitely. Definitely disagree. There's no way it was a compromise verdict. It was based strictly on the elements, strictly on the issues, instructions that are presented to the jury. So when we look at the issues, when we look at, for example, opening the door about the victim's prior sexual activity, when we look at the evidence about what happened in the shed, we argue about 3.14. What we have to take and ask ourselves in all of this is, the defendant was acquitted of the sexual assault case to which a lot of this evidence was directed. He was convicted of the sexual abuse, which is based on conduct of touching, which is based on age of the victim and the age of the defendant. So we ask ourselves, how was the defendant prejudiced? When we talk about this opening the door and the prior sexual activity, the way that this issue came up, I perceive it to be a little bit differently than what was expressed by defense counsel. In this case, after the victim had testified that she could not recall whether or not she had actually had intercourse, after the drinking and the intoxication, the prosecutor asked the question, quote, I hate to pry, but before that night, had you ever had sex before in your life? Close quote. The victim then responded without objection, quote, unquote, yes. The questioning then went on. It was only after there was some additional questioning and the prosecutor asked the victim if she had ever had any contact of any kind of sexual nature with the defendant before, and she said no. At that point, that is when the trial judge interrupted the proceedings and had the sidebar, and he went into the whole idea because he thought the prosecutor was going to go into an area about prior activity, and he wanted to foreclose it at that point. It was then that the trial judge brought up the prior question. It was only then that the defendant voiced any kind of an objection to the question at all. So what we have is the situation in which the defendant objected. You've opened the door. Now I get my chance in an evidentiary setting that the prosecutor really set up, if you will. That would be true. That would be true. Basically, the prosecution did the defense a favor, but what the trial judge was not going to do, the trial judge was not going to let it get out of hand. He was not going to let it go where it really should have gone before. If, in fact, the defendant was indeed as concerned about not going into the prior sexual activity of the victim at all, he would have objected to the question to begin with. However, seeing the fact that the door was starting to be open and seeing a sliver of light, he decided to let the prosecutor just open it and just to go with the flow because it was going to give him the opportunity to do that which he otherwise couldn't have done. And so under the circumstances in this case, when we judge this question, when we judge what the defendant was not allowed to do against the charge of which he was convicted, there is no prejudice. This question, this whole line of questioning was indeed inappropriate. It was irrelevant. It had absolutely nothing to do with the charge of which he was convicted. And so in this particular situation, we do look at what the defendant was allowed to do in his cross-examination. The fact that the defendant does not have the opportunity to ask on this specific topic does not mean he was denied his right of effective cross-examination. As counsel pointed out, how else was this victim impeached? Her grand jury testimony, statements to police, things she couldn't remember about the apartment. I mean, defense counsel was allowed to totally and thoroughly impeach her ability to recall facts. The fact that he was not allowed to question the victim on this single point does not mean he was denied his right of effective cross-examination. Even though I know that it appears as though we are somehow or trying to somehow vouch for her credibility or trying to make her more credible by this question, I think what the prosecution was trying to do here was in fact trying to take and answer the question that defense counsel said, which is, if you've had intercourse, you obviously know if you've had intercourse or not. And basically by asking this kind of question, in effect, that's what the prosecution was trying to answer. And under the circumstances in this particular case, the defendant basically got the ultimate benefit from this question because he was acquitted of the sexual assault charge. Now, was it because of this question or not, I have no idea. But I think if you look at the evidence and if you take a look at the elements of the crime, as I said earlier, chances are likely he was convicted because of the lack of evidence showing that it was because of his position of trust that all this occurred. And this same theme kind of runs through with respect to the other issues that are presented. There simply is no prejudice to the defendant in this particular situation based on this open door. It's the same thing with respect to the comment with respect to the issue that's been raised by the defendant concerning his ability to testify. When the prosecutor allowed the hearsay objection, he made an additional statement that the trial judge sustained. But the defendant was not forced to testify in this case. When we go to his second issue, he claims that because the prosecutor basically says, well, the defendant could understand and give his version of events, that question was sustained, an objection to that question was sustained, and the defendant subsequently decided to testify. Now, the people have argued that, first of all, that error was cured because the trial judge gave a curative instruction, number one. But number two, I don't think that the issue has been properly preserved simply because of the fact that the defendant testified. If the defendant truly felt as though his right to testify or his constitutional right to remain silent, I should say, was impinged because of that comment, then the defendant should not have testified. He should have asserted that right, and whatever happened before the jury, whatever the verdict would have been, he would have been able to raise that issue, and I think that in that particular situation under the law, I think that the state would have a much more difficult time trying to take and suggest, trying to take and say in what fashion the defendant was not prejudiced. But in this case, the defendant chose to testify. He decided to testify, and by doing that... Do you think he felt he was almost obligated to do it because of that statement? No. Well, the defendant is going to say he felt obligated, but there is a Supreme Court case in which when you wish to assert a right, okay, when you wish to assert a right or when you claim that a constitutional right is somehow being infringed or you're being denied something, if in fact you don't assert that right, if in fact you waive that right, then what happens is you lose your ability to take an object to it. In this particular case, the defendant had the right to remain silent. He didn't have to prove anything. But when you consider the fact of what the state's evidence was, and when you also consider the fact of the text messages that were admitted to evidence, the defendant had to do some explaining. And the only way to do that was to testify. The defendant chose to testify. And in doing that, the comment that was made, the trial judge sustained the objection. He gave a curative instruction. The jury was properly instructed thereafter. As a result, that error is either cured or, at the very least, the defendant hasn't properly preserved it because he chose to testify. He didn't assert that right. He's claiming, I was denied my right to remain silent. Yep. Was he silent? No. He testified. And the fact that the prosecutor made the statement, that issue would be something that would be raised before this court here on appeal that would then be decided whether or not he was prejudiced as a result of that. Mr. Gannett, there were two other issues that I wondered if you would address that were raised by the defendant. Sure. One was the question of the evidence regarding the S.H.E.D. incident, how much of that came in, and the lack of a curative instruction. The S.H.E.D. incident was evidence of an ongoing course of conduct. It wasn't a prior crime. I don't think we can necessarily call it a prior crime. I hate to use the word prior bad act because, technically speaking, it was a prior bad act, but not in the sense that we use it as evidence of a crime. So I first take issue with the fact that it was evidence of a crime or a prior bad act. It's a part of the race just die, so to speak. It's a part of the crime. It's a part of the ongoing criminal conduct by this particular defendant. So I don't really think that a 3.14 instruction really applies here because that talks about it's admitted for a limited purpose, modus operandi, identification, intent, et cetera. Well, this brings me full circle back to my opening comments, which is we take a look at the offense of which he was convicted of. Basically, at least as far as the sexual abuse case is concerned, there's no question about identity, there's no question about modus operandi, and there's no specific element with respect to intent because it's pretty much based on age. So, again, I first argue that the Shedd incident was not evidence of a prior crime. It was admissible as part of the overall purpose or intent with respect to what the defendant's motive was, what his purpose was. I don't think that it fits the 3.14 as well as the fact that under the facts of this particular case, the trial judge properly admitted the Shedd incident and kept out the 3.14. It was uncharged conduct, right? That would be true. And was it uncharged sexual misconduct? I think it was just uncharged conduct. When you say, did he attempt to take and touch her, yes. Did he, no. So if you want to say if it's an attempt, criminal sexual abuse, if you want to get to that extent, but it's as part of his ongoing course of conduct as to what he did and how he did things, I think that this evidence was admissible for any purpose, not just a limited purpose. And I think it's no different than if a person goes out, for example, before they commit a robbery, they go out and buy a gun, steal a car. That's all prior conduct, but it's not necessarily evidence of other crimes. It's all part of exactly what it is that the individual is doing to achieve the ultimate objective, whatever that might be. And so in this case, I don't view this as evidence of other crimes, evidence of any kind of other uncharged conduct. I don't think 3.14 really fits, as well as the fact that when you take a look, if it was going to be admitted for a limited purpose, the only one that the defendant can offer, that they offered in a brief, was one of intent. But intent is not an issue in addressing the conviction that is, the charge that is left that is based on the conviction, which is the criminal sexual abuse. Intent is not an issue. Thank you. Thank you, Mr. Vanden Heuvel. And Mr. Brown, any rebuttal? Yes, Your Honor, thank you. This excision of assault from abuse is rather curious. I can't really imagine a scenario where a defendant can assault a victim and not have an abuse leading up to it. Assault is the penetrative act, abuse is the touching and fondling. How do you get from point A to point C without going through point B? So to say this conduct or that conduct or this evidence or that evidence doesn't touch on the count of conviction is very specious, and it's a legal fallacy to say that, well, because he was acquitted of assault, evidence of sexual activity regarding her statements when there was intercourse doesn't apply to the count of conviction, because she describes a whole series of events leading up to that intercourse moment, which would be abuse. And the jury could have easily convicted him on any of the quanta of evidence that's before it. If you think like a jury and not a judge or a lawyer, they have information that's in front of them that they're going to use for any reason and without limitation. So I think that's a red herring. I think it's an attractive legal argument, but that's just not reality and that's not the way people think. You can't get to an assault without moving your way through an abuse first. The prior activity issue, the counsel says the judge only intervened when the questioning went to prior activity with the defendant. It makes no sense whatsoever, because prior activity with the defendant would be relevant under the statute or under the charge. And why did we not object? Abject shock, for one, perhaps. Nothing really shown in the record, but we're under no duty to object. And the point is, I asked for a mistrial. We didn't think, oh boy, we've got a free bite at the apple here. We had a real problem of a bell that's been rung, and nothing can be done to address it. The Woodford County shed incident that the victim describes in my rough mathematical quantification, and I apologize if that was tortured, constituted a majority of the state's evidence in this case. The defendant was indicted by a Peoria County grand jury for acts occurring in Peoria County, and the majority of the evidence presented by the people were acts of other wrongs committed in another county. Indeed, in their own brief, the people describe it as an attempt, sexual abuse. Indeed, it is uncharged prior conduct. It came into the jury. They could have convicted him on the abuse count for that alone, and that's outside the scope of the indictment, and that's a violation of due process. And that alone is sufficient. Any one of these is sufficient to order a new trial. The statement about the defendant can take the stand and testify if he wants, he waived that by thereafter testifying would work a perversion on the Fifth Amendment and require this court to make new law. The prosecution cannot trample on the Fifth Amendment of a defendant, challenge him and taunt him to take the stand, and then only be called to task if the defendant doesn't testify. That places the ownership of that right in the hands of the state, not the individuals where it properly belongs. So the fact that he thereafter testified is irrelevant to the determination as to whether or not it was error. It was clear error. The question is, what's the prejudice? It's prejudice by itself, and it's cumulative with the other errors that I've raised. Thank you, Your Honors. Thank you, Mr. Brown, and thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition in the court order.